1
2
3
4
5
6                         IN THE UNITED STATES DISTRICT COURT

7                            FOR THE DISTRICT OF ARIZONA

8

9    Edmond Gasaway,                    )      No. CV-13-00906-TUC-RCC (CRP)
                                        )
10              Petitioner,             )
                                        )      **REPORT AND**
11   vs.                                )      **RECOMMENDATION**
                                        )
12                                      )
     Louis W. Winn, Jr., Warden,        )
13                                      )
                Respondent.             )
14                                      )
                                        )
15   _____)

16          Petitioner Edmond Gasaway,[1] proceeding pro se and confined in the Federal

17   Correctional Institution-Tucson, has filed a Petition Under 28 U.S.C. § 2241 for a Writ of

18   Habeas Corpus by a Person in Federal Custody.  (Doc. 1, Pet.).  Respondent has filed a

19   Return and Answer to the Petition Under 28 U.S.C. § 2241for a Writ of Habeas Corpus and

20   Motion to Dismiss Petition. (Doc. 12, Answer).  Petitioner has filed a Response and Answer

21   to Respondent's Motion to Dismiss Petition.  (Doc. 15, Reply).

22          Petitioner is presently serving a 387-month sentence as a result of his conviction on

23   conspiracy and firearms offenses obtained in the Eastern District of Texas.  (Answer at 2 &

24   Doc. 12-2, Ex. A, Smithers' Decl., Attach. 1).[2]  Petitioner was incarcerated at the Federal

25   _____

26          [1] The docket sheet shows Petitioner's first name as "Edmond."  Petitioner has signed
     his first name as "Edmon" on the Petition and other papers filed in this case.
27

28          [2] Respondent has provided the Declaration of Catherine Smithers, Legal Assistant,
     Federal Correctional Institution, Phoenix, Arizona (Doc. 12-2, Ex. A), who has verified as

1  Correctional Institution at Ray Brook, New York ("FCI Ray Brook") from January 27, 2011,
2  to March 15, 2013.  (Doc. 12-2, Attach. 3).

3      This case has been referred to the Magistrate Judge for a Report and
4  Recommendation.  (Doc. 6, Order).  For the reasons that follow. the Magistrate Judge
5  recommends that the Petition for Writ of Habeas Corpus should be denied.

6  **I.    The Petition for Writ of Habeas Corpus**

7      Petitioner asserts in the Petition that on January 22, 2013, prison staff officers at FCI
8  Ray Brook entered his cell, removed Petitioner, and then searched his cell, claiming to have
9  found a razor inside an envelope with Petitioner's name on it. (Pet. at 4).  Petitioner contends
10 that the prison officers fabricated two Incident Reports, one claiming that Petitioner
11 threatened another with bodily harm, and the other claiming that Petitioner possessed a
12 weapon.  (*Id*.).  Petitioner contends that one of the officers retrieved a razor from his shirt
13 pocket, officers then photographed the razor blade, and the officers presented the "staged
14 photo" during the disciplinary proceedings.  (*Id*.)  Petitioner contends it is "highly
15 impossible" for an inmate in the special housing unit to obtain a shaving razor due to prison
16 procedures.  (*Id*. at 4-5).  Petitioner asserts as Ground One that he was falsely charged based
17 on fabricated evidence.  (*Id*.).

18     Petitioner asserts as Ground Two that he was denied an impartial decision maker in
19 violation of his due process rights.  (*Id*. at 5).  In support of this ground, Petitioner contends
20 that the Discipline Hearing Officer ("DHO") tried to persuade Petitioner to proceed without
21 his staff representative, told Petitioner he was going to find him guilty as charged, and told
22 Petitioner he could not file a police report or undergo a polygraph.  (*Id*.).  Petitioner asserts
23 that the DHO allegedly stated it did not matter if Petitioner had "Johnny Cochern [sic], he
24 was going to find him guilty as charged any way," and this showed the DHO's racial bias.
25 (*Id*. at 5-6).  Petitioner contends that his loss of good time credits was the result of bias and

26
27  ─────────────────
28 custodian of records true copies of certain records submitted as Attachments with
   Respondent's Answer.

he seeks to have the discipline incident expunged from his prison record and a return to his status prior to being falsely accused. (*Id*.).

Respondent argues in the Answer that Petitioner was afforded all the due process to which he was entitled and the disciplinary sanctions imposed against him were based on "some evidence." (Answer at 6). Respondent contends that the habeas petition should be denied. Respondent does not challenge Petitioner's claim that he exhausted his administrative remedies regarding his allegations. (*Id*. at 2).

In his Reply, Petitioner reasserts the circumstances regarding his claims of fabricated charges and bias. (Doc. 15 at 2-5). He contends, as he did in his Petition, that on the day of the hearing, he witnessed the investigating and charging officers along with the DHO gathered in an office discussing what action should be taken against him "cause they all were tried [sic] of dealing with Gasaway." (*Id*. at 5-6). Petitioner contends this was also reported to him by a trustee. (*Id*. at 5). Petitioner asserts that he has been retaliated against because he filed an "administrative remedy claim against Ray Brook for unconstitutional living conditions," referring to *Gasaway v. Perdue*, 9:11-cv-01272. (*Id*. at 9). Petitioner has provided a copy of a "Complaint of Staff Misconduct" dated May 25, 2013 that appears to have been submitted to the Bureau of Prisons ("BOP") and which contains Petitioner's signature. (Doc. 15 at 20). Petitioner claims in this "complaint" that he was threatened by a prison staff member regarding his filing grievances about the officers' misconduct and about living conditions at the Special Housing Unit. (*Id*.). He reasserts his claim that an officer "orchestrated the placing of the razor blade" in his property. (*Id*.).

## II.    Background

### A.    The Inmate Discipline Program

The BOP inmate discipline program identifies certain acts that are prohibited at the prison, classifies the severity of the prohibited acts as Low, Moderate, High and Greatest, and identifies sanctions to be imposed when an inmate is found to have committed a prohibited act. 28 C.F.R. §§ 541.1, 541.3 & Tables 1-2. The discipline process generally starts when a staff member issues an Incident Report to an inmate based on the staff member's

observation or reasonable belief that the inmate has committed a prohibited act.  28 C.F.R. § 541.5.  The Incident Report describes the incident and prohibited act and generally is delivered to the inmate within 24 hours of the staff member becoming aware of the inmate's involvement in the incident.  *Id.*  Following the completion of a staff investigation, the Unit Discipline Committee ("UDC") reviews the Incident Report.  28 C.F.R. § 541.7.  The inmate may appear before the UDC and may make a statement and present documentary evidence on his behalf.  28 C.F.R. § 541.7(d) & (e).  The UDC may find that the inmate committed the prohibited act, it may find that the inmate did not commit the prohibited act, or it may refer the matter to the DHO depending on the seriousness of the prohibited act.  28 C.F.R. § 541.7(a).

If the Incident Report is referred, the DHO conducts a hearing at which the inmate may appear at the DHO's discretion.  28 C.F.R. § 541.8(e)(1).  After the hearing, the DHO may find that the inmate committed the prohibited act charged or a similar prohibited act based on the Incident Report, may find that the inmate did not commit the prohibited act, or may refer the incident for further investigation, review and disposition. 28 C.F.R. § 541.8(a). The DHO must be an impartial decision maker who was not involved in the alleged incident as a victim, witness or investigator or who otherwise was not significantly involved in the incident.  28 C.F.R. § 541.8(b).  The DHO's findings must be based on "at least some facts and if there is conflicting evidence, on the greater weight of the evidence."  28 C.F.R. § 541.8(f).  The DHO provides the inmate with a written copy of the DHO's decision.  The DHO's decision must include findings on the following issues: (1) whether the inmate was advised of his rights; (2) the evidence relied upon; (3) the DHO's decision; (4) the sanction imposed; and (5) the reason for the sanction.  28 C.F.R. § 541.8(h).  The inmate may appeal the DHO's decision through the Administrative Remedy Program.  28 C.F.R. § 541.8(i).

## B.    Background Facts

On January 22, 2013, prison staff at FCI Ray Brook randomly searched Petitioner's property and allegedly found a razor blade inside an envelope with Petitioner's name and number on it. (Doc. 12-2, Attach. 4, Incident Report #2400121).  On that same date, the

1   reporting prison staff member charged Petitioner in an Incident Report with a Code 104
2   prohibited act, possession of a weapon, and delivered the Incident Report to Petitioner. (*Id*.).
3       A Lieutenant at FCI Ray Brook assigned to investigate the incident advised Petitioner
4   of his right to remain silent and afforded Petitioner with an opportunity to make a statement.
5   (*Id*., Attach. 4 at 2). Petitioner did not request any witnesses. (*Id*.). The Lieutenant
6   concluded based on the Incident Report that the report was justified and referred the matter
7   to the UDC for further disposition. (*Id*.).
8       Petitioner appeared before the UDC on January 25, 2013 and claimed he had been "set
9   up by the officer." (*Id*., Attach. 4 at 1). Based on the officer's written report, the
10  investigation, and Petitioner's statement, the UDC determined that the matter warranted
11  further hearing and referred the report to the DHO. (*Id*.).
12      On January 25, 2013, Petitioner was given Notice of a Hearing before the DHO.
13  (Doc. 12-2, Attach. 5, Notice of Discipline Hearing before the DHO). Petitioner requested
14  the presence of a staff representative and the testimony of two witnesses. (*Id*.). Petitioner was
15  provided with notice of his rights at the discipline hearing. (Doc. 12-2, Attach. 6, Inmate
16  Rights at Discipline Hearing).
17      Petitioner appeared before the DHO on February 12, 2013. (Doc. 12-2, Attach. 7,
18  DHO Report for Incident Report #2400121). Petitioner's requested staff representative
19  appeared at the hearing. (*Id*. at 1). Petitioner denied the charges against him and stated he
20  never possessed a weapon. (*Id*.). Petitioner's two witnesses appeared and testified that
21  Petitioner did not threaten anyone and they knew nothing about a weapon. (*Id*. at 2). The
22  DHO found that Petitioner had committed the charged Code 104 prohibited act, that is,
23  possession, manufacture or introduction of a weapon. (*Id*. at 2). The DHO stated as the basis
24  of the decision the reporting officer's written statement that he had found the weapon in
25  Petitioner's property and the photographs of the confiscated weapon. (*Id*.). The DHO
26  considered Petitioner's statement denying that he possessed a weapon and the testimony of
27  the two witnesses but found that the greater weight of evidence consisted of the statement
28  of the reporting officer and the fact that the weapon was found in Petitioner's property. (*Id*.).

The DHO sanctioned Petitioner by imposing 60 days of disciplinary segregation, disallowance of 40 days of good conduct time, and 180 days of visiting, commissary, telephone and email restrictions. (*Id*.). The DHO set forth his reasons for the action taken and notified Petitioner of his appeal rights. (*Id*. at 3). A prison staff member delivered the DHO report to Petitioner on February 19, 2013. (*Id*. at 3).

## III.   Discussion

Petitioner seeks the restoration of lost good time credits as a result of an alleged improper prison disciplinary decision. (Pet. at 5-6; Doc. 15 at 11). Federal prisoners have a right by statute to good time credits. *See* 18 U.S.C. § 3624. Habeas corpus jurisdiction is available under § 2241 for a prisoner's claims that he has been denied good time credits without due process of law. *See Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989). "[A] claim challenging prison disciplinary proceedings is cognizable" under the federal habeas statute "only if it will 'necessarily spell speedier release' from custody, meaning that the relief sought will either terminate custody, accelerate the future date of release from custody, or reduce the level of custody." *Nettles v. Grounds*, 788 F.3d 992, 995 (9th Cir. 2015) (citing, *inter alia*, *Skinner v. Switzer*, 562 U.S. 521 (2011)). The court has jurisdiction over this habeas action.

To satisfy the basic requirements of due process in the context of prison discipline proceedings, prison officials need only provide an inmate with: (1) a written notice of the charge at least 24 hours prior to any hearing; (2) an opportunity to call witnesses and present documentary evidence in his defense when such action will not be unduly hazardous to institutional safety or correctional goals; and, (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 565-66 (1974).

Due process further requires only that disciplinary findings be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454-55 (1985). This standard is met when "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*., at 455-56. While this is a

1  "minimally stringent" standard, "there must be some indicia of reliability of the information
2  that forms the basis for prison disciplinary actions." *Cato v. Rushen*, 824 F.2d 703, 705 (9th
3  Cir. 1987). The "some evidence standard" does not require the court to examine the entire
4  disciplinary record, independently assess the credibility of witnesses, or reweigh the
5  evidence. *Hill*, 472 U.S. at 455.

6      Petitioner does not contend he did not receive the required notice or that he was not
7  provided with a written statement by the DHO regarding the evidence relied upon and the
8  reasons for the disciplinary action. (Doc. 15 at 4). Petitioner also does not contend that he
9  was denied a staff representative or the testimony of his two witnesses at the hearing. (*Id.*).
10 Petitioner makes clear in his Reply that he is contesting the fact that he was denied a hearing
11 by an impartial hearing officer, that the evidence relied upon consisted of a staged
12 photograph of a razor blade, and the DHO was not sufficiently impartial because he had
13 personal knowledge of the alleged false charges. (Doc. 15 at 4, 8-10).

14     Petitioner's contention in Ground One is that it is "highly impossible" that an inmate
15 can possess a razor blade due to the prison procedures he describes in his Petition.
16 Petitioner's allegation is not sufficient to refute the charge made by the reporting officer or
17 the determination by the DHO that Petitioner possessed the weapon. Even a fabricated or
18 false charge of misconduct does not amount to a per se due process violation. *See Freeman*
19 *v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). The filing of a false disciplinary charge by a
20 correctional officer does not state a due process violation when the accused inmate is given
21 a subsequent hearing on the charge and afforded the procedural protections outlined in *Wolff*.
22 *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984).

23     The record shows that the DHO considered Petitioner's statement and the testimony
24 of Petitioner's two witnesses. The DHO gave greater weight to the reporting officer's report,
25 the documentary evidence, including the photographs of the weapon, and that the weapon
26 was found in Petitioner's property. The reporting officer's testimony can constitute sufficient
27 evidence to support the disciplinary finding. *Bostic*, 884 F.2d at 1271. The "some evidence"
28 deferential standard of *Hill* applies to the findings of the prison disciplinary hearing officer

where the inmate has alleged that a prison guard has falsely accused him of violating a prison rule. *Hines v. Gomez*, 108 F.3d 265, 269-70 (9th Cir. 1997) (in the context of a civil rights claim). *See Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) ("The "some evidence" standard [of *Hill*] applies only to due process claims attacking the result of a disciplinary board's proceeding, not the correctional officer's retaliatory accusation."). Here, Petitioner is making a due process challenge to the DHO's disciplinary decision on the ground that there was no evidence to support the decision. The DHO's decision was supported by some evidence and due process standards were satisfied.

Regarding Petitioner's claim of bias by the DHO in Ground Two, Petitioner's staff representative appeared at the hearing before the DHO as did Petitioner's two witnesses who testified. There is no evidence in the record that shows that the DHO was involved in the incident as a victim, witness, investigator, or otherwise. Petitioner's contention that the DHO knew the charge in the Incident Report was false is conclusory. Petitioner has not asserted any connection between the DHO and Petitioner's alleged claim about living conditions at FCI-Ray Brook.

The DHO's Report contains the report of Petitioner's staff representative as stating, "After hearing the decision of the DHO, Lt. Moore stated in his opinion the hearing was fair and the inmate's rights were upheld." (Doc. 12-2, Attach. 7 at 1). The DHO provided the basis for his decision and that finding was based on "some evidence." The DHO's finding does not show that Petitioner was denied an impartial decision maker in violation of due process. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) (unfavorable or adverse rulings alone are not sufficient to show bias unless they reflect extreme favoritism or antagonism that the exercise of fair judgment was precluded).

**IV. Recommendation**

For the foregoing reasons, the Magistrate Judge recommends that the District Court after its independent review deny the Petition Under 28 U.S.C. § 2241 For A Writ Of Habeas Corpus By A Person In Federal Custody (Doc. 1).

Pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure

and LRCiv 7.2(e) of the Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within **Fourteen (14) Days** after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within **Fourteen (14) Days** after being served with a copy. Fed.R.Civ.P. 72(b)(2).  No replies to objections shall be filed unless leave is granted from the District Court to do so.  If objections are filed, the parties should use the following case number: **CV-13-00906-TUC-RCC**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to de novo review of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

DATED this 3rd day of June, 2016.

**CHARLES R. PYLE**
UNITED STATES MAGISTRATE JUDGE